**B104 (FORM 104) (08/07)**

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|
| **PLAINTIFFS** Victoria Harwell Gardner | **DEFENDANTS** OCWEN LOAN SERVICING, LLC |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) O. MAX GARDNER, III MAXGARDNERLAW, PLLC P.O. BOX 1000 SHELBY, NC 28151-1000 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) **X** Debtor  ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor  ☐ Other ☐ Trustee | **PARTY** (Check One Box Only) ☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin **X** Creditor  ☐ Other ☐ Trustee |
| **CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) **COMPLAINT SEEKING DAMAGES** ||

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11- Recovery of money/property - §542 turnover of property
☐ 12- Recovery of money/property - §547 preference
☐ 13- Recovery of money/property - §548 fraudulent transfer
☐ 14- Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner-§363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - § 727(c), (d), (e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1), (14), (14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability-§523(a)(4),fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 63-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – reinstatement of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) – Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) – Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) – Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
**1** 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) Breach of Loan Modification Agreement, Breach of Confirmed Plan, Contempt of Order Confirming Plan, FDCPA, UDAP

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $TO BE DETERMINED BY THE COURT |
| Other Relief Sought ||

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Victoria Harwell Gardner | BANKRUPTCY CASE NO.<br><br>11-40659 | | |
| DISTRICT IN WHICH CASE IS PENDING<br>WESTERN DISTRICT OF NORTH CAROLINA | DIVISIONAL OFFICE<br>Shelby | NAME OF JUDGE<br>J. Craig Whitley | |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. | |
| DISTRICT IN WHICH ADVERSARY PENDING | DIVISIONAL OFFICE | NAME OF JUDGE | |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*[signature]* | | | |
| DATE<br>June 7, 2013 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>O. Max Gardner III | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing a adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs this information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
SHELBY DIVISION**

IN THE MATTER OF:

| | | |
|---|---|---|
| NAME: | GARDNER, VICTORIA HARWELL | CHAPTER 12 NO. 11-40659 |
| | d/b/a Lizmere South Mountain Farm | OUR FILE NO.  15031 |
| | d/b/a Lizmere Cavalier King Chas Spaniels | |
| ADDRESS: | 267 MELWOOD DRIVE | |
| | CASAR, NC 28020 | |
| SSN: | --- -- 1096 | |
| | DEBTOR. | |

_____

**VICTORIA HARWELL GARDNER**                                      Adv. Proc. No. 13- _____

        **Plaintiff,**

   versus

**OCWEN LOAN SERVICING, LLC,**

        **Defendant.**
_____

**Complaint Seeking Damages in Core Adversary Proceeding**

**Introduction**

    1.      This is an action for actual and punitive damages filed by the debtor for breach of a loan Modification Agreement; breach of the duty of Good Faith and Fair Dealing; breach of the Confirmed Plan; contempt of the Order Confirming the Plan; Self-Dealing, and other relief.  This is also an action for violation of the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 et seq. (hereinafter referred to as "FDCPA"), and the North Carolina Unfair and Deceptive Acts and Practices Laws, G.S. Section 75-50 et seq., (hereinafter referred to as "UDAP").

    2.      This action is also filed to enforce the Order of Confirmation duly entered in this Chapter 13 case and to enforce and to implement other Bankruptcy Code provisions and Rules related thereto.

**Jurisdiction and Venue**

    3.      Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United States Code in that this proceeding arises in and is related to the above-captioned Chapter 12 case under Title 11 and concerns property of the Debtor in that case.

    4.      This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, Section 157(b)(2) of Title 28 of the United States Code, and pursuant to the Order entered by the Judges of the United States District Court for the Western District of North Carolina on July 30, 1984 (the Referral Order), which Order was entered in accordance with the Bankruptcy Amendments and Federal Judgeship Act of 1984.

    5.      This Court has supplemental jurisdiction to hear all state law claims pursuant to Section 1367 of Title 28 of the United States Code.

    6.      This Court also has jurisdiction to hear the Fair Debt Collection Practices Act violations pursuant to Section 1692 of Title 15 of the United States Code; thus, federal subject matter jurisdiction

is properly founded upon Section 1331 of Title 28 of the United States Code.

7. This matter is a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order. However, in the event this case is determined to be a non-core proceeding then and in that event the Plaintiff consents to the entry of a final order by the Bankruptcy Judge.

8. Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

**Parties**

9. The Plaintiff in this case is a debtor under Chapter 12 of Title 11 of the United States Code in case number 11-40659, which case is presently pending before this court. The Plaintiff is hereinafter referred to as the Plaintiff or the Debtor.

10. The Defendant, Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant") is a real estate mortgage servicing limited liability company organized and existing under the laws of the state of Delaware and authorized to do business in the state of North Carolina. Ocwen maintains a corporate office at 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409. Ocwen is the default servicer for the Plaintiff's mortgage loan on her primary residence located at 267 Melwood Drive, Casar, NC 28020. Ocwen acquired the rights to service this loan at a time when payments under the loan were not current but in default. Ocwen may be served with the summons and this complaint through its North Carolina Registered Agent at Corporation Service Company, 327 Hillsborough St., Raleigh, NC 27603.

11. The Chapter 12 case of the Plaintiff was commenced by the filing of a voluntary Chapter 12 petition with the Clerk of this Court on October 18, 2011 and notice of filing was sent to Ocwen by the Debtor and the Clerk of the Court or the Bankruptcy Noticing Center.

12. The 341(a) meeting of creditors was held in Shelby, North Carolina on February 23, 2012.

13. The Chapter 12 plan of the Plaintiff was subsequently confirmed by order of this Court dated June 11, 2012.

14. The Plaintiff and her non-filing spouse entered into a permanent Loan Modification Agreement ("Modification Agreement") with Ocwen to be effective as of May 27, 2012 whereby the terms of the modified mortgage loan (Loan No. ****8056) on their primary residence were permanently modified pursuant to the following terms and conditions:

    Initial One-Time Payment:   **$3,771.66 for Loan Modification Agreement**
    Due Date for One-Time Payment:  **May 27, 2012**
    Amount Due Per the Original Ocwen Proof of Claim as of Confirmation:  **$818,036.68**
    New Unpaid Principal Balance due Per Settlement:    **$525,000.00**
    Interest Rate Per the Original Ocwen Proof of Claim:  **8.500% Per Year**
    Interest Rate Per Settlement:   **4.000% fixed for remaining term of loan of 267 months**
    First modified payment:    **$3,771.66 (Principal and Interest = $2,972.47; Escrow = $799.19)**
    First modified payment due: **July 1, 2012**
    Last modified payment due: **September 1, 2034**
    Pre-Payment penalty:  **None**
    Origination fee:  **None**

15. The terms of the modification agreement represented the total debt owed on the mortgage note serviced by Ocwen and such modification was final and permanent and was not contingent on the entry of the discharge order in the underlying Chapter 12 case but was contingent on approval of the modification agreement by the Bankruptcy Court and upon receipt of the one-time loan modification payment.

16.     In the June 11, 2012 Order confirming the Chapter 12 Plan the Court in fact approved the terms of the modification agreement with Ocwen as provided for herein.

17.     The Plaintiff made the initial one time payment of $3,771.66 by certified check directly to the attorney for Ocwen in open court at the Plaintiff's confirmation hearing held on May 25, 2012. The check was accepted in open court by the attorney for Ocwen and was thereafter duly negotiated and accepted by Ocwen.  The modification agreement became effective at that time.

18.     The Plaintiff has made each regular monthly payment of $3,771.66 of principal, interest and escrow on time from the first regular payment due for July 1, 2012 through to the filing of this complaint.  Each and every such payment has been "accepted" by Ocwen and no part of any such payment has been returned to the Plaintiff.

19.     The Plaintiff contends that she is current on all post petition modified loan payments to Ocwen on the subject loan and has never been late on any payments that have come due under the Modification Agreement.

20.     On January 15, 2013 the Plaintiff received notice from a third party and junior lien holder that the hazard insurance insuring the Plaintiff's primary residence had lapsed as of December 14, 2012 for non-payment of the annual premium.

21.     Since the terms of the Modification Agreement provided for the collection of escrow for real property taxes and hazard insurance in the amount of $799.19 per month, the Plaintiff had not paid for any insurance on her own outside of the mortgage payments to Ocwen.  The Modification Agreement imposed an affirmative contractual, legal and fiduciary duty upon Ocwen to make such payment from funds held in the escrow account.  Ocwen for reasons unknown to the Plaintiff at this time failed to make such payment and as a direct and a proximate result the insurance lapsed.  Ocwen was named as an "additional insured" and as a "loss payee" under the Plaintiff's insurance contract and as such received notice of the annual premium due and a notice of the intent to cancel for non-payment thereof by Ocwen.

22.     Upon receipt of the cancelation notice, the Plaintiff immediately contacted her insurance agent for Rain and Hail Insurance Service, Inc. and arranged for an emergency on-line payment from her own funds totaling $1830.90 to reinstate the insurance coverage which was allowed and accepted on January 16, 2013.

23.     An additional fee of $3.00 was paid by the Plaintiff to the agent for Rain and Hail Insurance Services, Inc., on January 17, 2013, to cover a previously undisclosed processing fee.

24.     On January 18, 2013, the Plaintiff received written confirmation that the hazard insurance had been reinstated and continued with no loss of protection effective retroactively to December 14, 2012 through and including December 14, 2013, due to the Plaintiff's direct out-of-pocket payments for one year of insurance coverage.

25.     As previously alleged, the Plaintiff affirmatively states that Ocwen is a named loss-payee on the insurance policy and as a result, Ocwen would have received notice of the intent to cancel and right to cure the default directly from the Plaintiff's insurance company, and furthermore would have received notice of the reinstatement directly from the Plaintiff's insurance company.

26.     On January 22, 2013, the Plaintiff caused a letter to be mailed and emailed to the attorney of record in her Chapter 12 case for Ocwen requesting that he review the escrow issues with Ocwen as to why the insurance premium had not been paid from escrow, and why the Plaintiff was not receiving any monthly billing statements.  The Plaintiff also confirmed to the attorney for Ocwen that the Plaintiff had paid for and purchased with her own funds the insurance coverage and that there had been no "lapse" in coverage due to the failure of Ocwen to make the annual payment from the Escrow fund created by the Modification Agreement.

27.     On January 24, 2013, the attorney for Ocwen responded with a letter stating that he would "look into the issues" and "report back."

28. On February 13, 2013, the attorney for Ocwen responded with a letter stating "Ocwen has corrected the escrow issue for Lon no. ****8056. This loan is now coded for escrow of taxes and insurance." However, there was no explanation provided as to what Ocwen had done with the monthly escrow payments made by the Plaintiff under the Modification Agreement.

29. The February 13, 2013 letter from the attorney for Ocwen furthermore did not address any refund of the escrow money to reimburse the Plaintiff for her out of pocket payments of $1,833.90 to reinstate the insurance coverage or where her escrow money was being applied; and finally, the letter did not address the lack of monthly billing statements.

30. On February 21, 2013, the Plaintiff caused a "Qualified Written Request" to be sent to Ocwen for a complete life of loan transaction history since 1) her payments had included funds for the escrow and payment of insurance and Ocwen had not paid the insurance; 2) she didn't know where her escrow was being applied; and 3) she had not received a monthly billing or account statement in over a year. The letter also "disputed" why Ocwen had failed to make the insurance premium payment from escrow and requested that such error or errors be immediately resolved.

31. On March 5, 2013 the Plaintiff received a document identified as a "Detail Transaction History" dated February 28, 2013 from Ocwen by and through Ocwen's attorney.

32. The Detail Transaction History indicated an insurance escrow disbursement for hazard insurance had been made in the amount of $4,279.10 on February 14, 2013 to an unknown entity. The Plaintiff is informed and believes and therefore alleges that this payment must have been for some type of "forced placed" insurance to an entity controlled or affiliated or otherwise associated with Ocwen since the Plaintiff had already paid for and had insurance in force through December 14, 2013. The Plaintiff has never received any type of notice from her own insurance company as to the receipt of the sum of $4,279.10 from Ocwen or any other amount from Ocwen. And, the so called "Detail Transaction History" was the first notice to the Debtor that any funds had been "advanced" for "forced-placed" insurance.

33. The Plaintiff thereafter received her first post-loan modification "Account Statement" from Ocwen, which was dated April 17, 2013 (Plaintiff had been requesting monthly statements from Ocwen since June of 2012).

34. The April 17, 2013 Account Statement indicated that the Plaintiff's April mortgage payment in the amount of $3771.66 had been placed in suspense on April 16, 2013 and was identified on the statement as a "partial payment." The statement further identified a "Current Post-Petition Amount Due" in the escrow portion of the payment of $1091.16, an increase of $291.97 from the escrow provisions of the Modification Agreement.

35. The April 17, 2013 Account Statement further identified a total "Post-Petition Past Due Amount DUE IMMEDIATELY" of $4,063.63 and a total "Post-Petition Amount Due" of $4,355.60 (indicating the increased escrow was also being charged to the Plaintiff for the payment due for May, 2013).

36. The April 17, 2013 Account Statement further identified a charge of $5.00 for the transaction history the Plaintiff received on March 5, 2013, although this charge was allegedly "waived."

37. The Plaintiff received a second post-loan modification "Account Statement" from Ocwen, dated May 13, 2013.

38. The May 13, 2013 Account Statement indicated that the Plaintiff's May mortgage payment in the amount of $3771.66 had been placed in suspense on May 13, 2013 and identified as a "Partial Payment." The statement further identified a "Current Post-Petition Amount Due" in the escrow portion of the payment of $1091.16, an increase of $291.97 from the escrow provisions of the Modification Agreement.

39.     The May 13, 2013 Account Statement further identified a total "Post-Petition Past Due Amount DUE IMMEDIATELY" of $4,063.63 and a total "Post-Petition Amount Due" of $4,647.57 (indicating the increased escrow was also being charged to the Plaintiff for the payment due for June, 2013, in addition to the increased portion for May).

40.     The May 13, 2013 Account Statement further indicated that a late charge of $118.90 would be charged to the Plaintiff if the sum of $4647.57 was not received by June 17, 2013.

41.     Plaintiff has never received an escrow analysis or a notice of any escrow increase from Ocwen from the time of execution of the Modification Agreement to the filing of this Complaint.

42.     The Plaintiff alleges that the actions described above show that the Defendant has breached the terms of the Modification Agreement; constitute a breach of the confirmed plan and contempt of the Order of Confirmation; constitute a breach of the mandatory application of payments provision of Uniform Covenant number 2 of the Deed of Trust; constitute a failure to apply payments as of the day of receipt as required by the Truth in Lending Act, as amended; constitute improper use of and attempt to control assets of the bankruptcy estate; constitute a violation of the automatic stay; constitute a failure to comply with the specific payment application provisions of the confirmed plan; and constitute a breach of duty of Good Faith and Fair Dealing.

43.     The Plaintiff further alleges that the improper increased escrow charges will result in an improper default resulting in late fees to the detriment of the Plaintiff.  The Plaintiff alleges that these matters are further compounded by the fact that Ocwen acted to "force-place" the insurance "after" Ocwen failed to pay the annual insurance premium from escrow and "after" Ocwen knew that the Plaintiff had in fact renewed the current insurance policy from her own funds.

44.     The Plaintiff believes and therefore alleges that Ocwen received a fee or commission for "force placing" this insurance in an amount greater than $2,000.00 constituting self-dealing and an unjust enrichment to Ocwen to the detriment of the Plaintiff.

45.     The Plaintiff further alleges that the actions described above constitute violations of the FDCPA and the North Carolina UDAP.

46.     The Plaintiff has been damaged by the Defendant's actions in that she has been and continues to be forced to expend more time and expenses toward the this matter in order to avoid the loss of her real property and to enforce the terms of the Modification Agreement.

**First Claim for Relief**
**(Breach of Loan Modification Agreement)**

47.     The allegations in paragraphs 1 through 46 of this complaint are realleged and incorporated herein by this reference.

48.     Ocwen failed to make an escrow disbursement for hazard insurance premiums pursuant to the terms of the Modification Agreement on or before December 14, 2012, causing a lapse of coverage and causing out of pocket expenses for the Plaintiff in the total amount of $1,833.90 and breaching the terms of the Modification Agreement.

49.     The Modification Agreement provides for escrow of taxes and insurance in the monthly amount of $799.19.  Sending the Plaintiff an Account Statement unilaterally and improperly demanding an increased escrow payment of $1,091.16 constitutes a further breach of the Modification Agreement.

50.     The improper demand for an increased escrow on the part of Ocwen was a direct and proximate result of the failure of Ocwen to pay the annual renewal premium from escrow.

51.     As a result of the Defendant's breach of the Modification Agreement, the Defendant is liable to the Plaintiff for actual damages, punitive damages and legal fees.

**Second Claim for Relief**
**(Breach of the Confirmed Plan and Contempt of Order Confirming Plan)**

52. The allegations in paragraphs 1 through 51 are realleged and incorporated herein by this reference.

53. The terms and conditions of the Plaintiff's Confirmed Chapter 12 Plan specifically incorporated the terms of the Modification Agreement.

54. The Confirmation of the Plan by Order dated June 11, 2012 created a binding contract between the Plaintiff and Defendant.

55. Ocwen's breach of the Modification Agreement by failing to make an escrow disbursement for hazard insurance premiums pursuant to the terms of the Modification Agreement before December 14, 2012, causing a lapse of coverage and causing out of pocket expenses for the Plaintiff, constitutes a breach of the Confirmed Plan and contempt of the Order Confirming Plan.

56. Ocwen's breach of the Modification Agreement by improperly demanding an increased escrow payment of $1,091.16 constitutes a further breach of the Confirmed Plan and contempt of the Order Confirming Plan.

57. The Plaintiff alleges that this Court should impose punitive damages in order to deter the Defendant from such future conduct in this case and in other cases before this Court.

**Third Claim for Relief**
**(Violation of the Notice Provisions of FRBP Rule 3002.1 and Additional Breach of Confirmed Plan and Contempt of Order Confirming Plan)**

58. The allegations in paragraphs 1 through 57 of this complaint are realleged and incorporated herein by this reference.

59. The Plaintiff's Confirmed Plan provided, "At all times during the Plan, Ocwen or any subsequent servicer shall fully comply with Rule 3002.1 of the Federal Bankruptcy Rules and all other applicable federal or state laws, rules and regulations."

60. Paragraph 15 of the Plaintiff's Confirmed Plan provided specifically as follows:

**15.** Confirmation of the plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any first mortgage claims secured by liens, mortgages and/or deeds of trust on the real property located in Casar and Shelby North Carolina, and more specifically on Ocwen and all successors and assigns of Ocwen to do the following:

**(a)** To apply the direct post-petition monthly mortgage payments paid by the Debtor to the month in which they were designated to be made under the plan, whether or not such payments are immediately applied to the outstanding loan balance or are placed into some type of suspense, unapplied funds, forbearance or similar account. All such post-petition payments must be applied to the designated month pursuant to Uniform Covenant 2 of the Deed of Trust and may not be used for any other purpose without the approval of the Bankruptcy Court after proper notice and a hearing.

**(b)** Pursuant to Rule 3002.1, to Notify the trustee, the debtor(s) and attorney for the debtor(s) in writing of any change in the property taxes and/or the property insurance premiums that would either increase or reduce the escrow portion of the monthly mortgage payments and the effective date of any such adjustment or adjustments. The failure to comply with such notice requirements shall constitute a waiver of any right to recover any enhanced escrow payments and to recover any such increases until such notice is provided, on the condition that it is provided within sufficient time to maintain the feasibility of the plan as confirmed.

**(c)** To refrain from directly paying or attempting to pay any pre-petition tax obligations that the debtor(s) have included in their plan to be paid under their plan unless a motion is filed to modify the plan with adequate notice and hearing or unless a notice of assignment of the tax claim is filed from the taxing authority to the servicer and/or holder of the mortgage loan or loans.

**(d)** To refrain from ever assessing, charging, imposing, advancing or billing any type of fees or charges (such as legal fees, broker price opinion fees, property inspection fees, property preservation fees, proof of claim fees, notice of appearance fees, plan review fees, or any type of legal fees, or any other type of fee or charge) to the mortgage loan of the debtor(s) either post-petition and pre-confirmation, either post-confirmation and pre-discharge, or post-discharge unless such fees or charges have been approved by the Bankruptcy Court upon filing of a proper application for the approval of such fees and charges under Rules 2016(a) and 3002.1 of the Rules of Bankruptcy Procedure and after adequate notice of hearing.  To the extent such fees are not approved, but are provided in any type of notice to the debtor(s), such action shall be deemed to constitute a material violation of this provision and a violation of either the automatic stay or the discharge injunction, of Rules 2016(a) and 3002.1, whichever provision or rule may be applicable or of any applicable non-bankruptcy laws, rules or regulations.

<u>Violations of this Section.</u>
Any violation of this provision shall be deemed a willful violation of 11 U.S.C. Section 524(i) in the event that the mortgage loan or loans is not serviced in a manner strictly in compliance with this provision of the plan and to the extent the improper servicing results in improper fees and charges of more than $50.00.

61. Federal Rules of Bankruptcy Procedure Rule 3002.1(b) as amended and effective December 2, 2011, provides that "the holder of a claim shall file and serve on the debtor, debtor's attorney and the trustee notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due."

62. Rule 3002.1(c) demands that post-petition fees and costs be noticed. Such notice must be served upon the debtor, the debtor's counsel and the Trustee for post-petition fees, costs, expense(s) or charge(s) within "180 after the fees, expenses or charges are incurred."

63. Ocwen violated the Notice provisions of FRBP Rule 3002.1(b) and 3002.1(c) by failing to notice the debtor, her attorney or the trustee pursuant to the requirements of both 3002.1(b) and 3002.1(c).

64. Ocwen's violation of FRBP Rule 3002.1(b) and 3002.1(c) constitutes a breach of the Confirmed Plan and contempt of the Order Confirming Plan.

65. As a result of the above violation, Ocwen is liable to the Plaintiffs for legal fees and expenses and other appropriate relief related hereto pursuant to Rule 3002.1(i).

**Fourth Claim for Relief**
**(Violations of Uniform Covenant Number 2)**

66. The allegations in paragraphs 1 through 65 are realleged and incorporated herein by this reference.

67. The Defendant has breached its obligations under the Note and Deed of Trust by violating Uniform Covenant Number 2 of the Deed of Trust, by charging fees and expenses not actually due and by failing to properly apply payments of the Plaintiff as provided for under the Note and Deed of Trust in mandatory proper order.

68. Defendant failed to apply payments in the following mandatory order of priority: first to interest, second to principal, third to escrow, and fourth to late charges and other legally approved fees and charges.

69. As a result of Defendant's violation of Uniform Covenant Number 2, the Plaintiff is entitled to recover the amounts improperly paid and other damages.

**Fifth Claim for Relief**
**(Violation of Section 226.36(c) of Regulation Z)**

70. The allegations in paragraphs 1 through 69 of this complaint are realleged and incorporated herein by this reference.

71. Section 226.36(c) of Regulation Z requires loan servicers to credit a payment to a consumer's loan account as of the date it is received.

72. The Plaintiff made an on time mortgage loan payment under the Modified Agreement for April, 2013 in the amount of $3771.66 and for May, 2013 in the amount of $3771.66.

73. Rather than apply the loan modification payment the same day of receipt to interest, principal and escrow, Ocwen placed the Plaintiff's April mortgage payment in the amount of $3771.66 in suspense on April 16, 2013 and identified the payment as a "partial payment."

74. Rather than apply the loan modification payment the same day of receipt to interest, principal and escrow, Ocwen placed the Plaintiff's May mortgage payment in the amount of $3771.66 in suspense on May 13, 2013 and identified the payment as a "partial payment."

75. As a result of the above violations of Section 226.36(c) of Regulation Z, the Defendant is liable to the Plaintiff for actual damages, punitive damages and legal fees.

**Sixth Claim for Relief**
**(Violation of Section 1463 of the Dodd Frank Act)**

76. The allegations in paragraphs 1 through 75 of this complaint are realleged and incorporated herein by this reference.

77. Under Section 1463 of the Dodd Frank Act, a servicer such as Ocwen may not impose a charge for force placed insurance unless the servicer has sent a written notice to the borrower, by first-class mail, stating there is no evidence of coverage and outlining the procedure for a borrower to demonstrate coverage. If the consumer fails to respond to the notice, a second notice is sent 30 days later. If the consumer does not respond to the second notice within 15 days, the servicer may then force place insurance.

78. The Plaintiff alleges that Ocwen provided no such notices in this case and in fact issued the forced placed insurance AFTER it knew that it had failed to pay for the Plaintiff's annual insurance premium from funds held in escrow and AFTER it knew that the Plaintiff had in fact already paid the premium on her own in order to reinstate the coverage.

79. Also under Section 1463 of the Dodd Frank Act, the servicer must accept "any reasonable form of written confirmation from the borrower of existing insurance coverage" and cancel any force placed insurance within 15 days of receipt.

80. The Plaintiff provided reasonable written confirmation to the attorney for Ocwen of existing insurance coverage on January 22, 2013; however, notwithstanding this fact, Ocwen force placed insurance on February 14, 2013.

81. As a result of the above violations of Section 1463 of the Dodd Frank Act, the Defendant must refund all premiums for force placed insurance to the borrower.

## Seventh Claim for Relief
### (Sections 362(a) of Title 11 of the United States Code and Rule 2016(b) of the Bankruptcy Rules)

82.    The allegations in paragraphs 1 through 81 of this complaint are realleged and incorporated herein by this reference.

83.    The April 17, 2013 Account Statement received by the Plaintiff demands the sum of $4355.60. The Plaintiff alleges that Ocwen has improperly and illegally charged and increased the Plaintiff's escrow account with force placed insurance.

84.    The May 13, 2013 Account Statement received by the Plaintiff demands the sum of $4647.57. The Plaintiff alleges that Ocwen is continuing to improperly and illegally charge and increase the Plaintiff's escrow account with force placed insurance.

85.    According to the Detail Transaction History dated February 28, 2013, Ocwen disbursed the sum of $4,279.10 to an unknown entity which the Plaintiff alleges is for force placed insurance.

86.    The Plaintiff believes and therefore alleges that Ocwen received a fee or commission for "force placing" this insurance in an amount greater than $2,000.00 constituting an unjust enrichment to Ocwen to the detriment of the Plaintiff.

87.    Ocwen forced placed insurance nearly a month after Ocwen knew that the original policy had lapsed due to its own negligence and that the Plaintiff had in fact advanced the premium on her own to pay for the insurance for a period of one year, retroactive to the period of the original cancellation. The Plaintiff advised the attorney of record for Ocwen in the Bankruptcy case within days of the cancellation and reinstatement.

88.    Ocwen forced placed insurance nearly a month after Ocwen, named as a loss-payee on the Plaintiff's insurance policy, would have received notice of the intent to cancel and right to cure the default directly from the Plaintiff's insurance company, and notice of the reinstatement directly from the Plaintiff's insurance company.

89.    The actions of Ocwen by charging force placed insurance and an increase in the escrow portion of the Plaintiff's mortgage payment without any prior notice or Court approval of the use of estate property constitute willful, intentional, gross and flagrant violations of the provisions of Section 362(a)(3) of Title 11 of the United States Code and Rule 2016 of the Federal Rules of Bankruptcy Procedure. Rule 2016(a) provides, in pertinent part, that: "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."

90.    The charge of $4,279.10 for hazard insurance is otherwise unreasonable and excessive since the Plaintiff paid only $1,833.90 for the annual hazard insurance premium and such coverage was in force when Ocwen made the unlawful advance for the forced placed insurance coverage.

91.    As a result of the above violations, the Defendant is liable to the Plaintiff for actual damages, punitive damages and legal fees.

## Eighth Claim for Relief
### (Improper and Unauthorized Fees)

92.    The allegations in paragraphs 1 through 91 of this complaint are realleged and incorporated herein by this reference.

93.    The actions alleged herein are acts in violation of the Order of Confirmation, the terms of the Modified Agreement, and applicable law in this Bankruptcy Court as the said force placed insurance fees charged by Ocwen were not part of the underlying agreement by and between Ocwen and the Debtor, and the charges are otherwise unreasonable and excessive.

94. Furthermore, the said fees are in violation of the ruling of this Court in Smith v. TMS Mortgage (Case No. 00-31220) and the Order in Aid of Case Administration entered by this Court on April 6, 2001.

95. As a result of the above violations, Ocwen is liable to the Plaintiffs for actual damages, punitive damages and legal fees.

### Ninth Claim for Relief
### (Violation of the Automatic Stay)

96. The allegations in paragraphs 1 through 95 of this complaint are realleged and incorporated herein by this reference.

97. The actions of Ocwen as alleged herein constitute a gross violation of the automatic stay as set forth in 11 U.S.C. Section 362(k)(1) as evidenced by the sending of monthly billing statements directly to the Debtor in which such unlawful fees advanced by Ocwen are demanded and allegations of default under the Modified Agreement are asserted.

98. The actions of Ocwen as alleged herein constitute an attempt to control assets of the bankruptcy estate in a further gross violation of the automatic stay as set forth in 11 U.S.C. Section 362(a)(3).

99. As a result of the above violations of 11 U.S.C. Section 362, Ocwen is liable to the Plaintiff for actual damages, punitive damages and legal fees.

### Tenth Claim for Relief
### (Breach of Duty of Good Faith and Fair Dealing)

100. The allegations in paragraphs 1 through 99 are realleged and incorporated herein by this reference.

101. The Defendant has a duty of Good Faith and Fair Dealing that is implied in the Note and Deed of Trust and the Modification Agreement, including the duty of fidelity, good faith and diligence. The Defendant under the Note and Deed of Trust and the Modification Agreement owes the Debtor a duty to receive and disburse funds in strict accordance with the contract, federal guidelines, and the law.

102. The Defendant has breached its duty of good faith and fair dealing by imposing improper charges upon the mortgage loan account of the Debtor, which the Defendant knew at the time the charges were assessed were not necessary, were improper, and were unlawful and otherwise illegal per se.

103. The Defendant has also breached its duty of good faith and fair dealing by improperly applying payments made by the Debtor.

104. The Defendant has also breached its duty of good faith and fair dealing by causing an improper default which will result in late charges to the Plaintiff.

105. As a result of the breach of good faith and fair dealing, the Debtor has been damaged in an amount equal to any and all fees and charges improperly accessed and the amount of all payments improperly applied by the Defendant.

### Eleventh Claim for Relief
### (Self-Dealing)

106. The allegations in paragraphs 1 through 105 are realleged and incorporated herein by this reference.

107. The premium charged on the force placed insurance policy at issue in this case is not the actual amount that Ocwen pays, because a substantial portion of force placed insurance premiums are refunded to Ocwen or its affiliates and subsidiaries through various kickbacks, reinsurance, and/or unwarranted commissions.

108. In accomplishing this forced-placement, Ocwen, and/or entities controlled by Ocwen, in bad faith, enter into exclusive arrangements with vendors, whereby the vendors monitor the loans in Ocwen's portfolio (at a minimal charge) for lapses in a homeowner's voluntary coverage and use only their affiliated insurers to force place insurance policies on the homeowners.

109. Under this arrangement, Ocwen charges high-cost premium prices to the homeowners, who, once a lapse occurs, have no way of refusing the force placed insurance charges. These premium prices or charges are not arrived at on a competitive basis and are significantly higher than those that would be available in the open market but for this exclusive relationship. Accordingly, no good faith arms-length transactions are taking place. Through self-dealing between the servicer such as Ocwen, affiliates of the servicer or lender, and the insurer, Ocwen charges grossly excessive premiums to borrowers for force placed insurance and receives kickbacks and commissions.

110. Upon information and belief, when a borrower's policy lapses, Ocwen will advance the cost of the premium (ultimately charged back to the borrower) to the vendor which in turn will forward the payment to its preferred insurance provider. The vendor takes a "commission" out of the premium payment. This commission is a percentage of the price of the force placed insurance policy. The vendor collects the same percentage commission off of each force placed policy that is written.

111. Upon information and belief, the vendor then kicks back payments, thinly disguised as commissions, to Ocwen or one of its affiliates. These kickbacks induce the Ocwen and its affiliates and vendors into continuing their exclusive relationship with each other, and into purchasing a more expensive policy than might otherwise have been obtained in an arms-length transaction or on the open market.

112. The exclusive arrangements described above render force placed insurance policies lucrative for the vendors, the insurance providers, the lenders and mortgage servicers, and/or their affiliates when the insurance policy lapses.

113. This arrangement provides the mortgage servicer, here Ocwen, with an incentive to purchase and maintain the highest priced force placed insurance policy on a noncompetitive basis that it can—the higher the cost of the insurance policy, the higher their commission or kickback. Ultimately, borrowers pay the bill.

114. The Plaintiff believes and therefore alleges that Ocwen received a fee or commission for force placing insurance in an amount greater than $2,000.00 constituting self-dealing and an unjust enrichment to Ocwen to the detriment of the Plaintiff.

115. As a result of Ocwen's self-dealing, the Debtor has been damaged in an amount equal to any and all fees and charges improperly accessed and the amount of all payments improperly applied by the Defendant.

**Twelfth Claim for Relief**
**(Fair Debt Collection Practices Act)**

116. The allegations in paragraphs 1 through 115 of this complaint are realleged and incorporated herein by this reference.

117. Congress enacted the Fair Debt Collection Practices Act (FDCPA) to stop "the, use of abusive, deceptive and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

118. The Defendant violated the FDCPA. Defendant's violations include but are not limited to engaging in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt, 15 U.S.C. Section 1692d.

119. The FDCPA was further enacted to prevent a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Such a prohibition includes the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

120. The April, 2013 "Account Statement" from Ocwen represents a demand for sums not actually owed and constitutes a false statement of the amount due as a result of the unlawful forced placement of insurance and misapplication of monthly payments from the Plaintiff.

121. The May, 2013 "Account Statement" from Ocwen represents a demand for sums not actually owed and constitutes a false statement of the amount due as a result of the unlawful forced placement of insurance and misapplication of monthly payments from the Plaintiff.

122. As a result of the above violations of the FDCPA, the Defendant is liable to the Plaintiff for actual damages, statutory damages of $1,000.00 for each violation of the FDCPA, and attorney's fees.

### Thirteenth Claim for Relief
### (North Carolina Unfair and Deceptive Acts and Practices)

123. The allegations in paragraphs 1 through 122 of this complaint are realleged and incorporated herein by this reference.

124. The Plaintiff is a "consumer" as that term is defined by Article 2 of Chapter 75 of the North Carolina General Statutes.

125. The Plaintiff's relationship with Ocwen arose out of a "consumer debt" as that term is defined in Article 2 of Chapter 75 of the North Carolina General Statutes.

126. Ocwen was and is a "debt collector" as that term is defined by applicable provisions of Article 2 of Chapter 75 of the North Carolina General Statutes.

127. Under the provision of Section 75-52 of the North Carolina General Statutes Ocwen was and is prohibited from engaging in any conduct the natural consequences of which is to oppress, harass or abuse any person.

128. The actions and conduct of Ocwen were oppressive and abusive in violation of the applicable provisions of Article 2 of Chapter 75 of the North Carolina General Statutes.

129. As a result thereof, Ocwen is liable for statutory damages in the sum of no less than $4,000.00 for violation of N.C.G.S. Section 75-50, et seq. and the payment of legal fees and expenses.

**WHEREFORE,** the Plaintiff having set forth her claims for relief against the Defendant respectfully prays of the Court as follows:

A. That the Plaintiff have and recover against the Defendant a sum to be determined by the Court in the form of actual damages, punitive damages and legal fees for its violation of the Modification Agreement;

B. That the Plaintiff have and recover against the Defendant a sum to be determined by the Court in the form of punitive damages for violation of the Confirmed Plan and Contempt of the Order Confirming Plan in order to deter the Defendant from such future conduct in this case and in other cases before this Court;

C. That the Plaintiff have and recover against the Defendant a sum to be determined by the Court in the form legal fees and expenses and other appropriate relief related hereto pursuant to Rule 3002.1(i);

D. That the Plaintiff have and recover against the Defendant amounts improperly paid and other damages to be determined by the Court for Defendant's violation of Uniform Covenant Number 2;

E. That the Plaintiff have and recover against the Defendant actual damages, punitive damages and legal fees for violations of Section 226.36(c) of Regulation Z;

F. That the Plaintiff have and recover a refund of all premiums and commissions for force placed insurance to the borrower for Defendant's violations of Section 1463 of the Dodd Frank Act;

G. That the Plaintiff have and recover against the Defendant actual damages, punitive damages and legal fees for Defendant's violation of Sections 362 of Title 11 of the United States Code and Rule 2016(a) of the Bankruptcy Rules;

H. That the Plaintiff have and recover against the Defendant actual damages, punitive damages and legal fees for Defendant's Improper and Unauthorized Fees in violation of stated and applicable provisions of Title 11 of the United States Code;

I. That the Plaintiff have and recover against the Defendant actual damages, punitive damages and legal fees violations of 11 U.S.C. Section 362(a)(3);

J. That the Plaintiff have and recover against the Defendant an amount equal to any and all fees and charges improperly accessed and the amount of all payments improperly applied by the Defendant for its breach of good faith and fair dealing, and self-dealing;

K. That this Court order Ocwen to pay additional actual damages and statutory damages in a sum to be determined by the Court for each violation of the FDCPA pursuant to 15 U.S.C. Section 1692k;

L. That this Court order Ocwen to pay additional actual damages and statutory damages in a sum of $4,000.00 per violation and actual damages and legal fees in an amount to be determined by the Court for each violation of N.C.G.S. Section 75-50, et seq.;

M. That the underlying debt to Ocwen be forever canceled and discharged and the Defendant be ordered to release all liens on the residence of the Debtor and mark "paid in full" on all loan documents with said documents to be delivered to the Debtor with all liens duly canceled and released as an additional sanction provided for under Section 362(h) of Title 11 of the United States Code; and

N. That the Plaintiff have such other and further relief as the Court may deem just and proper.

This the 7th day of June, 2013.

_____
O. Max Gardner III
MaxGardnerLaw, PLLC
Attorney for the Plaintiff
N.C. State Bar No. 6164
P.O. Box 1000
Shelby, NC 28151-1000
Phone (704) 487-0616/Fax (888) 870-1647
maxgardner@maxgardner.com